UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **MARGARITE SAMPSON BROWN, on behalf of herself and all those similarly situated** | * | **CIVIL ACTION NO. 16-0824** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **BODY & SOUL SERVICES, INC. , DERENDA FLOWERS, AND SHEILA GREEN** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to conditionally certify two collective action classes and to facilitate notice [doc. # 16] filed by plaintiff Margarite Sampson Brown. The motion is opposed. For reasons assigned below, it is recommended that the motion be GRANTED, as revised and modified.

## Background

On June 10, 2016, Margarite Sampson Brown filed the instant collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., against her employer, Body & Soul Services, Inc. ("Body & Soul"), and its owners, Derenda Flowers and Sheila Green. Brown alleges that defendants violated the FLSA in two distinct ways: 1) by failing to pay its employees (home health caregivers) for all hours worked, thereby depriving them of overtime and wages due and owing; and 2) by paying admittedly owed overtime to employees late and then failing to pay associated liquidated damages as mandated by the FLSA. Consequently, plaintiff seeks to recover unpaid overtime, liquidated damages, and attorney's fees, individually, and on behalf of

all other similarly-situated employees of defendants.

Defendants filed their answer on September 28, 2016. [doc. # 12]. On February 1, 2017, plaintiff filed the instant motion to conditionally certify two collective actions and to authorize notice to prospective parties. Defendants filed their opposition on March 16, 2017. [doc. # 20]. Plaintiff filed her reply on March 24, 2017. [doc. # 23]. Thus, the matter is ripe.

## **Law**

The FLSA provides that,

> [a]n action to recover the liability prescribed in [this section] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

The FLSA collective action is fundamentally distinct from Rule 23 class actions because in contrast to the latter procedure, the prospective FLSA claimants must affirmatively opt-in to be bound by the action. *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 224-25 (5th Cir. 2011) (unpubl.) (citing *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 916 (5th Cir.2008)).

Thus far, the Fifth Circuit has declined to establish a legal standard for collective-action certification. *Roussell, supra* (citation omitted); *see also Portillo v. Permanent Workers, L.L.C.*, 662 Fed. Appx. 277, 279 (5th Cir.2016). Accordingly, it has devolved upon the district courts to choose between two prevailing standards, "one involving a multi-factor 'similarly situated' test, and the other akin to the standard for Rule 23 class actions." *Id.* (citation omitted). The district courts usually follow the "similarly situated" test which is typified by, and named after *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216

(5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148 (2003).

> The Fifth Circuit explained the similarly situated test, as follows,
>
> [u]nder *Lusardi,* the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision - usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

*Mooney, supra*.

At the initial notice stage, the "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id*. (citation omitted). Plaintiffs bear the burden of proof. *Harris v. Hinds Cty., Miss.*, Civ. Action No. 12-0542, 2014 WL 457913, at *2 (S.D. Miss. Feb. 4, 2014).

The court ordinarily does not reach the second step of the *Lusardi* approach until after discovery is completed, and defendant re-visits the issue via appropriate motion. *Mooney*, 54 F.3d at 1214. At the second stage, the court has more information to make a determination as to whether the claimants are similarly situated, and whether the matter should be permitted to proceed to trial as a representative action. *Id*. If the claimants are not similarly situated, then the district court will decertify the class, and dismiss the opt-in plaintiffs without prejudice. *Id*.

The instant motion addresses solely the notice stage of the *Lusardi* process.

**Discussion**

a) <u>Conditional Certification</u>

Plaintiff petitions the court to conditionally certify and authorize the issuance of notice to the following two classes:

> **All persons who, since June 2013, previously worked or currently work for Defendants as home health caregivers, but were not paid for all hours worked for Defendants due to Defendants' refusal to pay them for travel time, mandatory work meetings and for any hours worked in excess of 8 hours per day, regardless of how long they actually worked, thereby depriving them of the federally mandated minimum wage for each hour worked and federally mandated overtime for all hours worked in excess of 40 per week.**

(The "Unpaid Work Time Class").

> **All workers who, since June 2013, previously worked or currently work for Defendants as home health caregivers and worked in excess of 40 hours per week, received late overtime pay from Defendants, but were not paid liquidated damages in addition to that overtime pay, despite the fact that such liquidated damages were due and owing, in direct violation of the FLSA.**

(The "Late Payment Class").

In support of her motion, Margarite Brown submitted a declaration averring that,

i) Defendants are in the business of providing home healthcare services. As part of their operations, defendants hire persons to serve as home health caregivers.

ii) In 2009, defendants hired Brown as a caregiver. Although defendants pay their home health caregivers at different rates, all of the caregivers, including Brown, are paid on an hourly basis.

iii) All of defendants' caregivers, including Brown, regularly work more than eight hours per day. Nonetheless, defendants' policy is that they will not pay home health caregivers for any hours worked in excess of eight hours per day.

iv) Furthermore, prior to the initiation of this litigation, defendants did not pay home health caregivers for time spent traveling to clients' homes, training, and other necessary duties.

> v) Even where defendants recorded that Brown worked more than 40 hours per week, they did not contemporaneously compensate Brown for her overtime hours.
>
> vi) Due to defendants' payroll practices, Brown was denied minimum wage and overtime pay.
>
> vii) Brown is personally aware that other home health caregivers who worked for defendants were subject to the same scheduling and payroll policies.
>
> viii) Defendants did not pay Brown, or to her knowledge, any other home health care giver, liquidated damages in connection with their late payment of overtime.

Brown's declaration provides substantial evidence that there are prospective, similarly-situated members for the two proposed classes, each subject to a common policy or practice that arguably transgresses the FLSA.

Defendants raise several arguments against conditional certification. First, they contend that plaintiff has not demonstrated that there are other aggrieved employees interested in joining this lawsuit. In the Fifth Circuit, however, there is no rule that plaintiffs must submit evidence from prospective members attesting to their desire to opt-in. *Perkins v. Manson Gulf, L.L.C.*, Civ. Action No. 14-2199, 2015 WL 771531, at *4 (E.D. La. Feb. 23, 2015) (citations omitted); *Green v. Plantation of Louisiana, LLC*, 2010 WL 5256354, *13 (W.D. La. Nov. 24, 2010) (citations omitted). Indeed, one of the purposes of conditional certification is to identify potential class members. *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 623 (D. Conn. 2007).[1]

---

[1] Defendants contend that they should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at their expense. (Opp. Memo., pgs. 6-7). However, aside from disclosing the names of its employees and their addresses, defendants will expend no resources at the notification stage. Rather, it is plaintiff's counsel who will bear this burden. Moreover, if, as defendants contend, there are no other interested and similarly-situated employees, then that should manifest itself via the lack of opt-ins.

Although defendants cite cases where the courts declined to certify collective actions,

Defendants next argue that as to the Unpaid Work Time Class, plaintiff failed to provide substantial allegations of a single unlawful decision, policy, or plan. In support, defendants submitted the electronically signed declaration of Sheila Green,[2] in which she stated that Body & Soul's personal care attendants perform their duties pursuant to a program established by the Louisiana Department of Health and Hospitals. (Green Decl.; Opp. Memo., Exh. A). Under this program, the state agency prepares an Individual Service Plan ("ISP") or Comprehensive Plan of Care ("CPOC") that is tailored to each client's individual needs. *Id*. Because no two clients are exactly the same, no two ISP/CPOC plans are exactly the same. *Id*. Although Body & Soul is reimbursed by the state in accordance with work performed under the ISP/CPOC, this does not mean that a personal care attendant who works beyond the time dictated by the ISP/CPOC is not paid for the time worked. *Id*. Rather, the ISP/CPOC sets the daily schedule for the personal care attendant with respect to that client. *Id*. Each personal care attendant then is expected to work the hours specified by the assigned client's ISP/CPOC. *Id*. The personal care attendant is required to document all services rendered to the client on the client's daily service log and to keep daily time sheets that accurately record the hours of service rendered to the client(s). *Id*. Because the personal care attendant cannot deviate from the ISP/CPOC without approval, the two logs should match. *Id*.

---

some of those decisions were premised on the absence of a nation-wide or company-wide policy, or otherwise rendered at *Lusardi*'s second step. Regardless, to the extent the cases are not distinguishable, they are not binding on this court.

[2] It is not clear whether Ms. Green's electronic signature satisfies 28 U.S.C. § 1746's signature requirement. *See e.g., Feezor v. Excel Stockton, LLC*, No. 12-0156, 2013 WL 5486831, at *4 (E.D. Cal. Sept. 30, 2013). Regardless, however, the declaration does not change the outcome of the instant motion.

6

Finally, Body & Soul does not have a written policy regarding payment for travel time. *Id*. Employees are paid for travel time spent accompanying a client on errands and to appointments as part of services rendered under the client's ISP/CPOC, but not for the employee's daily commute to and from work. *Id*.

In short, defendants contest the existence of a company-wide policy prohibiting payment for work in excess of eight hours per day or overtime for more than 40 hours of work per week. Defendants further emphasize that there is no policy prohibiting employee compensation for transportation of clients. Be that as it may, plaintiff maintains that she is personally aware that other home health caregivers employed by defendants were subject to the same scheduling and payroll policies as plaintiff. While the alleged policy may be unwritten, it appears to be applied uniformly.

Defendants further argue that to the extent any employee deviated from the ISP/CPOC, any determination of potential liability and damages will require individual analysis. However, this argument presents an issue best reserved for and considered at the second stage of the *Lusardi* process, following discovery.

In sum, under the lenient standard applied at the notice stage of the collective action, the undersigned finds substantial evidence to support conditional certification of both collective actions.

b)  <u>Proposed Class Definition</u>

Defendants observe that, according to plaintiffs, the operative date for their claims is

October 13, 2015 – the date that plaintiffs first became eligible for overtime.[3] Thus, defendants seek to redefine the putative class from all persons "who, **since June 2013**, previously worked or currently work for Defendants as home health caregivers . . . ," to all persons, "who since **October 13, 2015** . . ."

The court agrees that defendants' proposed temporal limitation is appropriate and warranted for the Late Payment Class, which apparently did not become eligible for overtime and associated liquidated damages until October 13, 2015. However, the Unpaid Work Time Class includes not only a claim for unpaid overtime, but also claims for uncompensated work, travel, and training time, which presumably are not contingent on the 2015 amendment to the regulations. Thus, the court rejects defendants' proposed temporal limitation as to the "Unpaid Work Time Class."[4]

c)      Notice

Plaintiff's motion seeks court approval of the notice to be sent to the prospective class members. The Supreme Court has remarked that the benefits of the collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action,

---

[3] Effective January 1, 2015, the Department of Labor amended its regulations to provide that third-party employers of companionship-services could no longer avail themselves of the statutory exemptions. *See* 29 C.F.R. § 552.109; *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1089 (D.C. Cir.2015), *cert. denied*, 136 S.Ct. 2506 (2016). In 2014, a group of trade associations representing home care worker agencies challenged the then-proposed amendment to the regulations. *See Weil, supra*. On August 21, 2015, the court of appeals upheld the validity of the amendment. *Weil, supra*. The decision became effective on October 13, 2015, when the court's mandate issued. *See* https://www.dol.gov/whd/homecare/litigation.htm (last visited on Apr. 27, 2017).

[4] Of course, *if* plaintiff's entitlement to *all* claims in the Unpaid Work Time Class also derive from the 2015 amendment, then the proposed class definition for the Unpaid Work Time Class likewise should be circumscribed to October 13, 2015.

so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486 (1989). The district courts enjoy a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id*. Thus, the district courts have a substantial interest in overseeing communications that are transmitted in single actions involving multiple parties. *Id*.

Plaintiff attached the proposed notices to her motion. (Pl. M/Cond. Cert., Exhs. B & C). Defendants object to notifying prospective participants via email and telephone. Rather, they propose to provide plaintiff's counsel with last known addresses for prospective class members, and if any notices are returned as undeliverable, *then* defendants would provide plaintiff with telephone numbers and/or email addresses – at least to the extent defendants maintain that information. The court agrees with defendants' proposed procedure.[5]

Defendants also oppose plaintiff's proposal to post a copy of the notice at its places of employment, in an area readily visible to employees. Defendants, however, do not assert any prejudice from this proposed means of notification, nor does the court discern any. Thus, the objection is overruled. Defendants shall post notices in Body & Soul's office(s), in a place frequented by employees.

Defendants further argue that the opt-in periods should be reduced to 60 days instead of

---

[5] Defendants also ask the court to restrict plaintiff to one attempt at calling or emailing potential collective class members, and to limit that communication to determining where a notice should be sent (for telephone calls) or stating that a copy of the notice is attached (for emails). The court agrees that contact should be limited to a recitation or provision of the notice on one occasion – *once contact is established*. However, plaintiff should be permitted multiple attempts to establish contact with those individuals for whom it is necessary to resort to notification via email and/or telephone.

9

90 days. The court remains largely ambivalent concerning the length of the opt-in period. Sixty days certainly is sufficient for a prospective member to opt-in to the collective actions. Moreover, the shorter period actually may motivate the individual to act sooner, rather than placing the matter on the back burner and then later forgetting about it. Also, the shorter period likely will assist with the timely progression of this case which already is approaching the one year mark. Thus, under the circumstances, the court will limit the opt-in period to 60 days from the date the notice is issued.[6]

In the event that the District Court adopts the instant report and recommendation and conditionally certifies the proposed collective actions, the parties shall confer and submit for the court's approval, agreed-upon notices and opt-in consent forms in conformity herewith.

## **Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that plaintiff's motion [doc. # 16] to conditionally certify two collective action classes pursuant to 29 U.S.C. § 216(b), and to authorize notice to all individuals as defined in the proposed notices, as revised herein, be GRANTED.

IT IS FURTHER RECOMMENDED that within 14 days after entry of an order granting conditional certification, the parties shall file a joint or unopposed motion for approval of agreed-upon notices and opt-in forms. Within that same period, defendants shall provide plaintiff's counsel with the names and mailing addresses for the prospective members.

---

[6] In *Rule v. Southern Industrial Mechanical Maintenace Co., L.L.C.*, the undersigned recently authorized a 90 day opt-in period. *Rule v. Southern Industrial Mechanical Maintenance Co., L.L.C.*, No. 16-1408 (W.D. La. 03/06/2017). However, *Rule* was not as old as this case, and defendant did not contest the 90 day opt-in period. *Id.*

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 2nd day of May 2017.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE